This is a suit by the father and mother of a six year old colored child, Annabel Guillory, who was injured when she fell or jumped off of a truck being driven by defendant, a white man, on September 5, 1940, seeking to recover damages in their own right in the sum of $500, and in behalf of their minor child in the sum of $2,000, resulting from the injuries sustained by the said child.
There was judgment dismissing plaintiffs' suit, and plaintiffs have appealed.
There is not a great deal of conflict as to the evidence in this case, and whatever it is, this difference is not so important.
The defendant is a farmer living some two or three miles west of Oberlin. The plaintiffs are tenant farmers living between defendant's farm and Oberlin. On September 5, 1940, defendant had employed two of the other children of plaintiffs as cotton pickers on his farm; Annabel Guillory, age 6, and her older sister, Celima, age 8, had taken to these children their dinner. Just after the noon hour and while defendant was preparing to go to Oberlin, on a mission of his own, the older children, employees of defendant, obtained permission of defendant to take these two small girls in a Ford truck to their home, which was about midway between the farm and Oberlin. The two small children either got in defendant's truck or were put in the truck by their older brother and sister; but, in any event, they were riding in the truck with defendant's permission and defendant was to take them home on his way to Oberlin.
The defendant's truck had a body back of the cab six or seven feet long with slat sides about three feet high, but the back of the truck was open, the rear gate to the body having been taken off, no doubt for convenience in hauling on the farm. While there is some dispute as to just what position these small children got in *Page 178 
or were put in the truck, the preponderance of the evidence is to the effect that these small children sat with their backs to the cab and their faces toward the rear or open end of the truck. There is also some conflict in the testimony as to whether the brother and sister requested defendant to allow these children to ride in the cab with him, to which he refused, or whether defendant requested these children to ride in the cab with him and which was refused by the children as they preferred to ride in the back of the truck as they were to get off a mile or so further. The probabilities are that these children were put in the back of the truck by their elders, or got in it themselves, nothing being said about riding in the cab. In any event, this has very little bearing on the case in that the defendant knew, when he left on his way to Oberlin, that these children were riding in the back and that he consented to take them to their home.
The defendant states that, after he started in the direction of these children's home and Oberlin, he drove at a speed of about thirty miles per hour; and that when he was about opposite the children's home, he began to slow down in order to stop and allow the children to get down from the truck; that Annabel Guillory, the six year old child, jumped out as he began to slow down; that the other little girl, who was eight years old, knocked on the back of the cab and told him that her little sister had jumped out; that, at that time, he had practically stopped and he then looked around and saw that the child looked like it was hurt; whereupon, after the other little girl got down, he proceeded some one hundred yards further down the road, turned around and came back to where the child had fallen or jumped out. He, however, admits that he did not see the child jump out. While the defendant says that he began to slow down when he got opposite the house where these children were to get out and that he stopped 30 to 40 feet beyond the house, yet he admits in his answer that he drove about 75 feet beyond this house before he stopped. This fact, coupled with the fact that he did not see the child when she fell or jumped out, indicates very strongly that he had forgotten to stop to put out the children until the eight year old child knocked on the cab and told him that her sister had jumped out. There is some conflict in the testimony as to whether the child jumped out at the open end of the truck or fell out, but we are of the opinion, as was the trial judge, that the child jumped out of this open end when she saw the truck was passing her home without stopping. Obviously, he was not paying any attention to these two children in the back of his truck, one of the reasons being that he was in a hurry to get to town, as he admits, and had his mind more on his personal affairs and mission and that it was an oversight on his part in not stopping in time to put these children at their home.
While we appreciate the fact that the defendant was trying to accommodate these two young children by bringing them home in his truck, yet he owed them the duty, as his guests, invitees or licensees, to exercise reasonable care to see that they were put in a place of safety and were not exposed to unusual dangers. The Supreme Court, in the case of Llorens v. McCann et al.,187 La. 642, 175 So. 442, had practically an identical case as this one before it. In that case the court found as a fact that the driver and helper operating defendant's truck knew or should have known that two small colored boys were riding on the back of the truck; one of these becoming frightened because the truck was about to pass the place where he was to get off, jumped off the truck and received injuries from which he died. The boy in that case was eight years old whereas the little girl in this case was only six years old, and her companion sister only eight years old. The court held that the driver and his helper were negligent. Following that decision we conclude that defendant was negligent in not stopping in time and to carry both children past their home, to which he was to take them.
On the question of damages, we do not find where plaintiffs have proved with any degree of certainty any damages sustained to themselves on account of the accident. Angelo Guillory testified that defendant had paid all the doctor bills; that he made six trips by bus to Alexandria, but he does not state the amount he expended. Nor has he proven any other claim. As to the mother, she has no claim whatsoever. The judgment dismissing the suit for their personal demand is correct.
The little girl, Annabel Guillory, received a fracture of her skull and more or less minor bruises and abrasions about her *Page 179 
body. The head injury was the most serious. She was taken to the Charity Hospital at Pineville, where she remained in a semi-conscious state for several days and was a patient therein for some two or three weeks. Thereafter, she returned to her home and was treated by a local doctor for several more weeks. At the time of the trial, it appears that she was entirely normal and had fully recovered. Under such circumstances we are of the opinion that an award to her of $500 is ample.
For the reasons assigned, it is ordered that the judgment appealed from, in so far as it decrees that plaintiffs' suit for and on behalf of the minor child Annabel Guillory be dismissed, is hereby annulled, reversed and set aside, and that there now be judgment in favor of the plaintiffs for the use and benefit of the said minor, Annabel Guillory, and against the said defendant Otis Perkins in the full and just sum of $500, with legal interest thereon from judicial demand until paid, and all costs, in both courts; otherwise the judgment is affirmed.