ELLIS, Judge:
This is a suit by plaintiffs Wilbert Austin and Sam Pea, Jr. for damages arising out of an automobile accident. Defendant is Edward Collier. After trial on the merits, judgment was rendered in favor of defendant dismissing plaintiffs’ suit, and plaintiffs have appealed.
The accident happened on June 18, 1972, at 8:30 p.m. on the Wadesboro Road, an eighteen foot blacktop highway, with no markings on the paved surface, and shoulders approximately three feet wide. It was dusk when the collision occurred.
Wilbert Austin was the owner of a 1962 Chevrolet automobile, which had a tendency to hang up in second gear. He had been attempting to repair the condition, and thinking he had done so, had taken the car out for a test drive, accompanied by Sam Pea, Jr. and Donnie Tucker. About five minutes before the accident happened, the gears jammed and the car stopped. Mr. Austin testified that he was unable to free the gear with the clutch, and unable to move the car, either under its own power or by pushing it. The car was stopped in the Westbound lane of traffic facing West. Mr. Austin testified that he jacked up the car and got under it to free the gears. Sam Pea, Jr. was in front of the car, flagging traffic approaching from the East.
Mr. Collier, approaching from the West, came around a curve, which he had measured as lying one-tenth of a mile to the West of the Austin vehicle. He stated that he saw the Austin vehicle as he came around the curve, and, thinking it to be in the middle of the road, applied his brakes and skidded into it. The Collier vehicle left sixty feet of skidmarks, leading from the Eastbound lane to the point of collision in the Westbound lane. Mr. Collier estimated his speed to be 45 miles per hour.
The trial judge dismissed the plaintiffs’ suit on the ground that they were negligent in obstructing the highway. He found no negligence on the part of Mr. Collier, giving him the benefit of the sudden emergency doctrine.
From Mr. Collier’s own testimony, we learn that he first saw the Austin vehicle when he came around the curve in the road, over five hundred feet to the West. He therefore had ample opportunity to observe the situation in the road ahead and to take appropriate action to avoid any danger. As a matter of fact, his lane of travel was clear, and no danger was presented to him. We are of the opinion that no sudden emergency confronted Mr. Collier, and that the application of his brakes when only sixty feet from the Austin vehicle was not a reasonable act under the circumstances. All Mr. Collier had to do was to continue in the same direction, at the same speed, and this accident would not have happened.
The negligence attributed to plaintiffs by the trial judge is their alleged violation of R.S. 32:141, and R.S. 32:314(B) which provide:
R.S. 32:141
“A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
“B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it *84 is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
“C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.”
R.S. 32:314(B)
“B. Whenever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during the hours between sunset and sunrise and there is not sufficient light to reveal any person or object within a distance of 500 feet upon such highway, such vehicle so parked or stopped shall be equipped with one or more lamps meeting the following requirements :
“(1) At least one lamp shall display a white or amber light visible from a distance of 500 feet to the front of the vehicle ; and
“(2) The same lamp or at least one other lamp shall display a red light visible from a distance of 500 feet to the rear of the vehicle; and
“(3) The location of said lamp or lamps shall always be such that at least one lamp or combination of lamps meeting the requirements of this section is installed as near as practicable to the side of the vehicle which is closest to passing traffic.
“The foregoing provisions shall not apply to a motor-driven cycle.”
The evidence in this case reveals that the Austin vehicle was disabled in such a manner that it could not be moved. Mr. Austin testified that the procedure to unlock the gears was a simple one, and he was engaged in so doing when the accident occurred. Flagmen had been posted both ahead and behind the stopped vehicle to protect traffic. It was light enough for defendant to have seen the Austin vehicle at a distance of over 500 feet, and no lights were required thereon.
Under those circumstances, we find no negligence on the part of plaintiffs, who were clearly in compliance with the provisions of the above quoted statute. We find the negligence of defendant to be the sole proximate cause of the accident.
When the accident happened, Sam Pea, Jr. was in the road a short distance ahead of the stopped vehicle. When the Collier vehicle skidded into the Westbound lane, it struck Mr. Pea on the left leg between the knee and the ankle, knocking him into the ditch. At the scene of the accident, he told the investigating officer that he was not hurt. However Mr. Collier testified that Mr. Pea was limping after the accident. Later in the day, his ankle began to swell, and he was taken to Lallie Kemp Hospital, where a cast was applied to the ankle. X rays revealed no fracture or dislocation. The cast was removed on July 25, 1972, at the hospital The record contains no definitive diagnosis of the ankle injury, which was the only injury complained of by Mr. Pea at the trial His treating physician, Dr. I. I. Rosen, tes tified that he also suffered from a low back sprain, and that he was seen weeklj through the month of August, 1972. Mr Pea returned to work on July 31, 1972, ano apparently suffered no residual disability. We think the relatively mild injuries suffered by Mr. Pea justify an award oí $750.00. In addition, he is entitled to receive special damages of $506.88 for lost wages, having missed six weeks of work for which he would have earned $1.76 per hour for a 48 hour week. Dr. Rosen’s bill to Mr. Pea was $165.00, which amount he is also entitled to recover.
When the accident happened, plaintiff Austin was under his car, which was knocked off the jack by the impact, and *85 which struck him around the neck and shoulders. He saw Dr. Rosen on June 24, 1972, who found he had suffered a mild whiplash injury. He was treated weekly from June 24 until July 29, 1972. He missed work from June 21 until August 1, 1972. Mr. Austin was paid at the rate of $1.85 an hour for a 40 hour week. We think an award of $500.00 will adequately compensate Mr. Austin for his injuries, which were not serious or painful and left no residual disability. In addition, he is entitled to receive special damages of $444.00 for lost wages, and $120.00 for medical expenses incurred.
The judgment appealed from is therefore reversed, and there will be judgment in favor of plaintiff Wilbert Austin and against Edward Collier, in the sum of $1,064.00, together with legal interest' from date of judicial demand until paid; and in favor of plaintiff Sam Pea, Jr. and against defendant Edward Collier, for $1,421.88, together with legal interest from date of judicial demand until paid. The expert witness fee of Dr. Rosen is hereby fixed at $50.00 and taxed as costs. All costs, both in this court and the court below, are to be paid by defendant.
Reversed and rendered.